UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DANA MAURICE MILLER,

        Petitioner,

v.                                CASE NO. 2:15-cv-12056
                                 HONORABLE DENISE PAGE HOOD

STEVE RIVARD,

        Respondent.

_____/

## OPINION AND ORDER DENYING THE HABEAS PETITION, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

Petitioner Dana Maurice Miller filed a *pro se* habeas corpus petition challenging his state convictions for first-degree (premeditated) murder, Mich. Comp. Laws § 750.316(1)(a), felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony ("felony firearm"), Mich. Comp. Laws § 750.227b. Petitioner alleges as grounds for relief that: (1) the evidence at trial was insufficient to support his murder conviction; (2) the trial court abused its discretion by admitting testimony about Petitioner's prior "bad acts;" (3) the prosecutor denied him a fair trial by questioning him about being arrested in front of a "dope" house and neglecting to visit his mother; (4) the prosecutor denied him a fair trial by introducing evidence that a prosecution witness did not have a criminal record; (5) the trial court erred by rejecting his

defense and penalizing him for exercising his right to testify; (6) defense counsel was ineffective for failing to call the medical examiner as a witness; (7) defense counsel was ineffective for arguing an invalid defense; (8) the trial court violated his right of confrontation; (9) the prosecution failed to establish the *corpus delicti* of the murder; and (10) the prosecutor and defense counsel denied him the right to present a defense by not producing the medical examiner as a witness.

The State argues in an answer to the habeas petition that Petitioner failed to exhaust state remedies for part of his seventh claim, that Petitioner procedurally defaulted claims three and four, that some of Petitioner's claims are not cognizable on habeas review, and that the state court reasonably adjudicated Petitioner's claims. Because the Court agrees that none of Petitioner's claims warrant habeas relief, the Court will deny the petition.

## I. BACKGROUND

Petitioner was charged with premeditated murder and two firearm offenses in Wayne County, Michigan. He was tried before a circuit court judge in Wayne County Circuit Court. The state appellate court summarized the facts at Petitioner's bench trial as follows:

> Undisputed testimony established that defendant and the victim, his stepson, got in an argument and physical altercation on August 28, 2012. Defendant, who was armed, fired two shots, the victim fled the scene, and defendant pursued the victim and fired another shot at him. Though the victim was able to evade defendant, one of the shots hit

him. He went to a nearby house, informed the residents that defendant had shot him, and died shortly thereafter.

Defendant . . . testified that a group of armed men ordered him to shoot the victim, and told him that if he failed to do so, they would harm his family. Defendant further asserted that he fired the first two shots in the air as a warning to the victim, and that he fired the third shot by accident after he stumbled while chasing the victim.

Defendant's attorney built on defendant's testimony and argued that defendant was under duress during the night in question. [She] also claimed that a conviction for second-degree murder or manslaughter was appropriate, because defendant had been in a physical fight with the victim shortly before the murder and supposedly did not intend to kill the victim.

*People v. Miller*, No. 314659, 2014 WL 2753719, at *1 (Mich. Ct. App. June 17, 2014).

On January 8, 2013, the trial court found Petitioner guilty, as charged, of first-degree (premeditated) murder, felon in possession of a firearm, and felony firearm. The court sentenced Petitioner to life imprisonment for the murder conviction, two to five years in prison for the felon-in-possession conviction, and two years in prison for the felony-firearm conviction. The court ordered the sentences for murder and felon-in-possession to run concurrently with each other, but consecutive to the felony-firearm sentence. The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished decision, *see id.*, and on November 25, 2014, the Michigan Supreme Court denied leave to appeal because

it was not persuaded to review the issues. *See People v. Miller*, 497 Mich. 905; 856 N.W.2d 21 (2014). On June 5, 2015, Petitioner filed his habeas corpus petition.

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the Court may grant an application for the writ of habeas corpus only if the state court's adjudication of the prisoner's claims on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-

court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103.

## III. DISCUSSION

### A. Claim One: Insufficient Evidence

Petitioner alleges that the evidence at trial did not support his conviction for first-degree murder because there was insufficient evidence of premeditation and deliberation. The trial court found sufficient evidence of premeditation and deliberation, in part, because Petitioner shot the victim as he was running away. In support of his sufficiency-of-the-evidence claim, Petitioner relies on the post-trial affidavit of the medical examiner, Dr. Kilak Kesha, who states in his affidavit that,

> [b]ased on the entrance wound, it is unlikely that the deceased was running away from the person who shot him when he was struck by the bullet. The bullet entered the side of the arm.

5

Pet. for Writ of Habeas Corpus, Affidavit of Kilak Kesha, M.D., Assistant Medical Examiner (Docket No. 1, Page ID 47).

The Michigan Court of Appeals determined on review of Petitioner's claim that the prosecution presented sufficient evidence to prove beyond a reasonable doubt that Petitioner intentionally shot and killed the victim. The Court of Appeals concluded that the evidence was sufficient to prove first-degree murder.

### 1. Clearly Established Supreme Court Precedent

The Due Process Clause of the United States Constitution "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Following *Winship*, the critical inquiry on review of a challenge to the sufficiency of the evidence supporting a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citations and footnote omitted) (emphases in original).

The Supreme Court has "made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (*per curiam*). First, it is the responsibility of the jury to decide what conclusions should be drawn from the evidence admitted at trial. *Id.* (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*)). "And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.' " *Id.* (quoting *Cavazos*, 565 U.S. at 2); *see also Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017) (explaining that "two layers of deference apply [to a sufficiency-of-the-evidence claim], one to the jury verdict, and one to the state appellate court"), *cert. denied*, No. 17-729, __ S. Ct. __, 2018 WL1369141 (U.S. 2018).

### 2. Application

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443

U.S. at 324 n. 16.  The Michigan Court of Appeals explained the elements of first-

degree, premeditated murder as:

> "(1) the intentional killing of a human (2) with premeditation and
> deliberation." *People v. Bennett,* 290 Mich. App 465, 472; 802 NW2d
> 627 (2010).  Premeditation means "to think about beforehand," and
> deliberation means "to measure and evaluate the major facets of a
> choice or problem." *People v. Plummer,* 229 Mich. App 293, 300;
> 581 NW2d 753 (1998).  Premeditation and deliberation "may be
> inferred from the circumstances surrounding the killing." *People v.
> Anderson,* 209 Mich. App 527, 537; 531 NW2d 780 (1995).
> "Premeditation may be established through evidence of (1) the prior
> relationship of the parties, (2) the defendant's actions before the
> killing, (3) the circumstances of the killing itself, and (4) the
> defendant's conduct after the homicide." *People v. Unger,* 278 Mich.
> App 210, 229; 749 NW2d 272 (2008). These factors may establish
> deliberation as well. *People v. Abraham,* 234 Mich. App 640, 656;
> 599 NW2d 736 (1999).

*Miller*, 2014 WL 314659, at *2.

The testimony at trial established that Petitioner was the shooter and that the

shooting was intentional.  He was the victim's step-father, and he admitted to his

probation officer that, on the night in question, he fired a warning shot and then

more shots, including a third shot as he chased the victim.  (1/7/13 Trial Tr., at 100,

108.)  At trial, he also admitted that he chased the victim and fired his gun three

times (1/8/13 Trial Tr., at 26-28), and the victim informed friends shortly after the

shooting that "Dana" had shot him.  *See* 1/7/13 Trial Tr., at 36 (Shar-Ron Carter's

testimony); *id*. at 44 (Jamal Chambers' testimony); *id*. at 65 (Berrell Alexander's

testimony). Another witness, Lamars Allen, testified that he saw a man approach the victim and begin fighting with the victim. Allen heard two gunshots, followed by a third gunshot as the man ran toward the fleeing victim. *Id*. at 83-84. Although Petitioner testified that the gun discharged the third time when he stumbled and fell (1/8/13 Trial Tr., at 28), the trial court found this version of the facts to be incredible, and this Court must defer to the trial court's conclusions. *Coleman*, 566 U.S. at 651.

As for the elements of premeditation and deliberation, the Michigan Court of Appeals noted that: (1) Petitioner "sought to use a gun against the victim on at least two prior occasions;" (2) the trial court reasonably concluded that Petitioner's unexpected late-night phone call to the neighbor who allegedly sent the armed men to Petitioner's home "was a transparent attempt to preemptively support his story that armed men told him to kill the victim;" (3) the fact that Petitioner decided to chase the victim after firing two warning shots was an indication that he had time to reflect on his actions; and (4) his flight from the crime scene belied his claim that he feared for his family's safety and could reasonably be understood as an awareness of his criminal culpability. *Miller*, 2014 WL 2753719, at *2.

Although Dr. Kesha opined in his post-trial affidavit that the deceased probably was not running away from the shooter, he stated in his autopsy report

that the wound track was "slightly back to front."  Pet. for Writ of Habeas Corpus,

Port Mortem Report, pp. 1, 3 (Docket No. 1, Page ID 43, 45).  Petitioner could

have been running on the right side of the victim and slightly behind him.  In fact,

he testified at trial that he had been close enough to touch the victim.  (1/8/13 Trial

Tr., at 27.)

Petitioner, nevertheless, urges the Court to infer that he did not fire the first

shot.  While it is true that Lamars Allen testified that he heard the gunshots, but did

not see them (1/7/13 Trial Tr., at 89-90), Allen also testified that he, the victim,

and the man fighting with the victim were the only people at the scene.  *Id.* at 86.

The logical conclusion is that Petitioner fired all the gunshots.

A rational trier of fact could have concluded from the evidence taken in a

light most favorable to the prosecution that Petitioner intentionally shot the victim

and that he premeditated and deliberated the killing.  The state appellate court's

conclusion – that the evidence was sufficient to support Petitioner's murder

conviction – was not contrary to, or an unreasonable application of, *Jackson*, and

Petitioner is not entitled to the writ of habeas corpus on the basis of his first claim.

### B.  Claim Two:  Improper Use of "Other Acts" Evidence

Petitioner contends that the trial court abused its discretion by allowing

404(b) ("other acts") evidence to be admitted against him.  The evidence consisted

of testimony about two incidents that occurred more than a year before the shooting. Petitioner's wife, Cecelia Singleton-Miller, testified that, in June of 2011, Petitioner and the victim got in an argument at their home. Petitioner then ran upstairs to get a gun, came back down, and aimed a shotgun at the victim. *Id*. at 117-18. About a month later, the victim was in the driveway of their home, and Petitioner again ran upstairs to get a gun, but he did not go outside with the gun. *Id*. at 122. Petitioner admitted at trial that he pointed a shotgun at the victim during the June 2011 incident, but he stated that there were no bullets in the shotgun, and he denied threatening the victim a month later. (1/8/13 Trial Tr., at 39-40.)

Petitioner claims that testimony about his prior acts was highly prejudicial and that the prejudice outweighed its probative value. He maintains that the evidence should have been excluded because the prior incidents were remote in time and because no warrant was issued for his arrest on the prior occasions.

The trial court admitted the evidence on the basis that it was relevant and could establish intent. (1/7/13 Trial Tr., at 6.) The Michigan Court of Appeals subsequently determined that the trial court properly admitted the evidence under Michigan Rule of Evidence 404(b). The Court of Appeals stated that the evidence showed Petitioner's intent to harm the victim with a gun due to his poor

relationship with the victim. The Court concluded that the evidence was relevant, that it was admitted for a proper purpose, and that it had significant probative value. The Court of Appeals also opined that the danger of unfair prejudice was minimal because Petitioner had a bench trial, and the trial court was presumed to understand how to use the evidence and not to consider it for an improper purpose.

To the extent that Petitioner is claiming the evidence violated Michigan Rule of Evidence 404(b), his claim is not cognizable on federal habeas review. *Hall v. Vasbinder*, 563 F.3d 222, 239 (6th Cir. 2009). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

The Court is also mindful that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Although "the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997); *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), it has not explicitly addressed the issue in constitutional terms." *Id*. at 513. As such, the state trial court's decision to admit "other acts" evidence, and the state

appellate court's rejection of Petitioner's claim, were not contrary to, or an unreasonable application of, any Supreme Court decision under § 2254 (d)(1).

Even if Petitioner's claim were cognizable on habeas review, "[f]ederal habeas courts review state court evidentiary decisions only for consistency with due process," *Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001) (citing *Patterson v. New York*, 432 U.S. 197, 202 (1977)), and "states have wide latitude with regard to evidentiary matters under the Due Process Clause." *Wilson v. Sheldon*, 874 F.3d 470, 476 (6th Cir. 2017) (citing *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000)). "If a ruling is especially egregious and 'results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief.' " *Wilson*, 874 F.3d at 475 (quoting *Bugh,* 329 F.3d at 512). But for the reasons given by the Michigan Court of Appeals, it was not fundamentally unfair to admit testimony about Petitioner's prior conduct toward the victim. The evidence was admitted for a proper purpose (to show a pattern of threatening behavior toward the victim), it had significant probative value (to show Petitioner's intent and state of mind), and the danger of unfair prejudice was minimal because the trial judge is presumed to have used the evidence for its proper purpose. Habeas relief is not warranted on Petitioner's second claim.

### C. Claims Three and Four: Prosecutorial Misconduct

Petitioner's next two claims allege that the prosecutor's cross-examination of him and question to a prosecution witness deprived him of a fair trial. Specifically, Petitioner claims that the prosecutor improperly questioned him about being arrested in front of a "dope" house and neglecting to visit his mother after the shooting.

Petitioner handled the prosecutor's first question very well by stating that there were no houses where he was arrested, but he admitted that he did not visit his mother in the nursing home before his arrest. (1/8/13 Trial Tr., at 41.) He argues in his habeas petition that the prosecutor's questions were irrelevant and, therefore, inadmissible. He states that the questions destroyed his credibility and diverted the trial court's attention from the real issues.

Petitioner also contends that the prosecutor improperly bolstered a prosecution witness's credibility by eliciting the witness's testimony that he had never been convicted of a crime. *Id*. at 44. According to Petitioner, the question and answer more likely than not undermined the reliability of the trial court's verdict because it destroyed his credibility.

### 1. The Procedural Default Doctrine

The State argues that Petitioner's prosecutorial-misconduct claims are procedurally defaulted. A procedural default is "a critical failure to comply with

state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997 ). Under the doctrine of procedural default, "a federal court will not review the merits of [a state prisoner's] claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). In this Circuit,

> "[a] habeas petitioner's claim will be deemed procedurally defaulted if each of the following four factors is met: (1) the petitioner failed to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner has not shown cause and prejudice excusing the default." [*Jalowiec v. Bradshaw*, 657 F.3d 293, 302 (6th Cir. 2011)]. To determine whether a state procedural rule was applied to bar a habeas claim, [courts] look "to the last reasoned state court decision disposing of the claim." *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc).

*Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013).

## 2. Application

The state procedural rule in question here is Michigan's contemporaneous-objection rule. This rule requires defendants in criminal cases to preserve their appellate claims by objecting on the same ground in the trial court. *See People v. Buie*, 298 Mich. App. 50, 70-71; 825 N.W.2d 361, 374 (2012).

Petitioner admits that he did not object at trial when the prosecutor questioned him about the circumstances of his arrest and his conduct after the

shooting. Petitioner also admits that he did not object when the prosecutor asked rebuttal witness Sharodney Harrison whether Harrison had ever been convicted of a crime. The first element of procedural default is satisfied.

The Michigan Court of Appeals enforced the contemporaneous-objection rule by reviewing Petitioner's claims for "plain error," *see Miller*, 2014 WL 2753719, at *3 n.3 and *4, and a state appellate court's review of a claim for "plain error" constitutes enforcement of a state procedural rule. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). Although the Michigan Court of Appeals addressed Petitioner's claims in alternative holdings,[1] this "does not require [the Court] to disregard the state court's finding of procedural bar." *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998). As explained in *Harris v. Reed*, 489 U.S. 255 (1989),

> a state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. See *Fox Film Corp. v. Muller*, 296 U.S. 207, 210, 56 S.Ct. 183, 184, 80 L. Ed. 158 (1935). Thus, by applying this doctrine to habeas cases, [*Wainwright v. Sykes*, 433 U.S. 72 (1977)] curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision. In this way,

---

[1] The Court of Appeals stated that the prosecutor elicited Petitioner's testimony about his arrest and failure to visit his mother for a proper and relevant purpose, namely, to show a consciousness of guilt. The Court of Appeals concluded that testimony about Mr. Harrison's lack of a criminal history was admissible because it was a fair response to Petitioner's testimony that his neighbors were violent drug dealers.

a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

*Id*. at 264 n.10 (emphasis in original). The second factor is satisfied.

The third procedural-default factor is satisfied if the state procedural rule in question is an adequate and independent state ground for denying review of a federal constitutional claim. "The adequacy of a state procedural bar turns on whether it is firmly established and regularly followed; a state rule is independent if the state court actually relies on it to preclude a merits review." *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005) (citing *Abela v. Martin*, 380 F.3d 915, 921 (6th Cir. 2004)). "Michigan's contemporaneous-objection rule is both a well-established and normally enforced procedural rule," *Taylor v. McKee*, 649 F.3d 446, 451 (6th Cir. 2011), and the Michigan Court of Appeals relied on the rule to preclude full review of Petitioner's prosecutorial-misconduct claim. The third procedural-default factor is satisfied.

The fourth factor requires a petitioner to show "cause" for his state procedural error and resulting prejudice. Petitioner has not advanced any argument in support of a finding of "cause and prejudice." The Court, therefore, deems the "cause and prejudice" argument abandoned. *Roberts v. Carter*, 337 F.3d 609, 613 (6th Cir. 2003) (citing *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000)).

In the absence of "cause and prejudice," a habeas petitioner may pursue a procedurally defaulted claim only if he can demonstrate that failure to consider his claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

> "A 'miscarriage of justice' exists only if the record is 'devoid of evidence pointing to guilt.' " *United States v. Price*, 134 F.3d 340, 350 (6th Cir. 1998) (quoting *United States v. Cannon*, 981 F.2d 785, 790 (5th Cir. 1993)). The exception therefore applies only where there is a colorable claim of factual innocence. *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986).

*Sheffield v. Burt*, No. 16-2468, __ F. App'x __, 2018 WL 1887618, at *4 (6th Cir. Apr. 20, 2018). Because the record before the Court is not devoid of evidence pointing to guilt, a miscarriage of justice will not occur as a result of the Court's failure to address the substantive merits of Petitioner's prosecutorial-misconduct claims. Habeas claims three and four are procedurally defaulted.

### D. Claim Five: Trial Court Errors

Petitioner asserts that the trial court erred by rejecting his defense theories as inconsistent and because the court disbelieved his alternative defense of duress. In doing so, argues Petitioner, the court failed to hold the prosecutor to its burden of proof and penalized him for testifying in his own behalf. The Michigan Court of Appeals disagreed with Petitioner and rejected his claim.

### 1. Alternative Defenses

In a criminal case, the prosecution carries the burden of proof, *Barker v. Wingo*, 407 U.S. 514, 521 (1972), and the defendant has "the right to pursue alternative defenses," *United States v. Mendoza-Acevedo*, 950 F.2d 1, 3 (1st Cir. 1991). The trier of fact bears the burden of fairly "resolv[ing] conflicts in the testimony, . . . weigh[ing] the evidence, and . . . draw[ing] reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Trial judges are presumed to know the law and to apply it in making their decisions." *Walton v. Arizona,* 497 U.S. 639, 653 (1990), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

The trial court did say that Petitioner's testimony was inconsistent and that his duress argument appeared to contradict the suggestion that he acted in self-defense. (1/8/13 Trial Tr., at 75, 77-78.) But the record fails to show that the trial court convicted Petitioner because he presented alternate arguments. Instead, the trial court determined that the prosecution witnesses were credible and that Petitioner's testimony was incredible and implausible. *Id*. at 75-78. The trial court also determined that the prosecution had proved the elements of premeditation and deliberation. *Id*. at 78. Petitioner has not shown that the trial court convicted him on the basis of his alternative defense of duress. Petitioner also has not shown that

the trial court misapplied the law or used an incorrect burden of proof. His claim

does not warrant habeas relief.

## 2. Penalizing Petitioner

Petitioner alleges that the trial court's rejection of his claims amounted to a

penalty for testifying in his own behalf. The basis for this allegation appears to be

the trial court's comment during its ruling on the case that,

> if the defendant did not testify and tell this incredible story [that
> people were telling him to shoot his stepson for making up a story], it
> would be a harder decision for the Court to make. I'm just going to be
> honest about that.
>
> Without the defendant's own story, the Court was going back and
> forth about whether there was an intent to kill.

*Id*. at 76.

"[I]t cannot be doubted that a defendant in a criminal case has the right to

take the witness stand and to testify in his or her own defense." *Rock v. Arkansas*,

483 U.S. 44, 49 (1987). But "[m]aking credibility assessments is daily grist for a

trial judge," *United States v. Mirkin*, 649 F.2d 78, 82 (1st Cir. 1981), and the

Michigan Court of Appeals correctly recognized that the trial court's disputed

comments were not punishment for Petitioner's decision to testify. Rather, the

court's comments were a reflection on Petitioner's implausible testimony and lack

of credibility. As the trier of fact, the court was required to resolve conflicts in the

testimony, weigh the evidence, and make reasonable inferences from the facts. *Jackson*, 443 U.S. at 319. Petitioner's constitutional right to testify was not violated.

### E. Claims Six and Seven: Ineffective Assistance of Trial Counsel

Petitioner's next two claims concern his trial attorney. The "clearly established Federal law" for such claims is *Strickland v. Washington*, 466 U.S. 668 (1984). *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). Under *Strickland*, a defendant must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*.

The deficient-performance prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688.

The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Id*. at 687. A defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 111-12 (quoting *Strickland*, 466 U.S. at 693).

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id*. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

### 1. Failure to Call the Medical Examiner

Petitioner alleges that his trial attorney deprived him of his right to effective assistance of counsel by failing to call Dr. Kesha, the medical examiner, as a witness. As noted above, Dr. Kesha averred in an affidavit signed after Petitioner's trial that it is unlikely the victim was running away from the shooter. Petitioner contends on the basis of the medical examiner's affidavit that trial counsel should have produced Dr. Kesha to negate the prosecution's theory that

Petitioner deliberated the murder. The Michigan Court of Appeals stated on review of Petitioner's claim that the medical examiner's testimony would have been cumulative to the stipulations placed on the record and that trial counsel was not ineffective for failing to present cumulative expert testimony.

Under *Strickland*, the Court "must presume that decisions of what evidence to present and whether to call or question witnesses are matters of trial strategy." *Cathron v. Jones*, 77 F. App'x 835, 841 (6th Cir. 2003) (citing *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002)). Trial counsel's decision not to call Dr. Kesha was reasonable trial strategy because the doctor's autopsy report was admitted in evidence, and his testimony would have been essentially the same as his written report. The report stated that the cause of death was a gunshot wound to the right arm, that the manner of death was homicide, and that there was no evidence of close-range firing. The report also indicated that the bullet passed through the chest and injured the right lung and that the wound tract was slightly back to front.

To her credit, trial counsel stated in her closing argument that the location of the wound and the angle of the wound tract did not comport with the witnesses' testimony that Petitioner was running behind the victim. (1/8/13 Trial Tr., at 65.) Petitioner, nevertheless, implies that his trial attorney should have done what his appellate attorney did: acquire Dr. Kesha's affidavit, which states that it was

unlikely the victim was running away from the shooter when he was shot. But Petitioner himself testified that he pursued the victim, and when he learned that the victim had been shot, he concluded that he must have shot him "*from behind*" as he was running. *Id*. at 30-31 (emphasis added). Lamars Allen testified that the man he saw chased the victim, and there was additional evidence that Petitioner premeditated and deliberated the shooting. The Court therefore concludes that, even if trial counsel's failure to call the medical examiner amounted to deficient performance, the allegedly deficient performance did not prejudice the defense.

### 2. Arguing an Invalid Defense

Petitioner asserts that his trial attorney was ineffective for arguing an invalid defense of duress. In Michigan, "duress is not a defense to a homicide." *People v. Henderson*, 306 Mich. App. 1, 5; 854 N.W.2d 234, 238 (2014). Petitioner's own testimony, however, was based in part on a theory of duress. He claimed that some men threatened to harm him and his family if he did not shoot his stepson. (1/8/13 Trial Tr., at 22.)

Petitioner's attorney subsequently relied on Petitioner's testimony to suggest during closing arguments that Petitioner had acted under duress. Counsel also argued that the common law rule – that duress is not a valid defense to murder – did not apply in Petitioner's case. She then raised additional defenses, arguing that

24

there was insufficient evidence of premeditation, deliberation, and an intentional shooting and that the trial court should find Petitioner guilty of a lesser-included offense, such as manslaughter. *Id*. at 65-69.

Trial counsel's defense of the case did not amount to deficient performance. As the Michigan Court of Appeals pointed out on review of Petitioner's claim, trial counsel merely observed that the facts of the case were consistent with duress.

### 3. Failing to Raise a Defense

Petitioner also argues that trial counsel provided no defense at all. He did not raise this issue in state court, as required by the doctrine of exhaustion of state remedies. *See* 28 U.S.C. § 2254(b)(1). Petitioner, nevertheless, states in a letter to the Court filed on May 25, 2017, that he did not intend to raise an unexhausted claim and that, instead, he was merely trying to say that duress was not a defense to a charge of homicide. *See* Docket No. 27. The Court concludes from Petitioner's letter that he has abandoned the claim that trial counsel provided no defense at all.

### F. Claims Eight and Ten: Denial of the Right of Confrontation and the Right to Present a Defense

Petitioner asserts in claim eight that the trial court violated his right of confrontation by not requiring Dr. Kesha to testify at his trial. In claim ten, Petitioner argues that the prosecutor and defense counsel violated his right to

present a defense by not calling Dr. Kesha as a witness. Although the prosecutor and defense counsel stipulated to the admission of Dr. Kesha's autopsy report, Petitioner states that he needed Dr. Kesha's testimony to show that the victim was not shot while he was running away, as the prosecutor claimed.

The Michigan Court of Appeals concluded on review of Petitioner's claims that he waived review of the claims when he failed to object to his attorney's stipulation. The Court of Appeals also stated that the medical examiner's testimony would have been cumulative to the examiner's report.

The Confrontation Clause of the Sixth Amendment to the United States Constitution guarantees a defendant in a criminal case the right to be confronted with the witnesses against him. U.S. Const. amend. VI; *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 313 (2009). The adjacent Compulsory Process Clause, on the other hand, "guarantees a defendant the right to call witnesses 'in his favor.' " *Id*. Petitioner waived or forfeited his right to have Dr. Kesha testify when he stipulated to the admission of Dr. Kesha's report, failed to move for compulsory process, and proceeded with the trial in Dr. Kesha's absence. *United States v. Theresius Filippi*, 918 F.2d 244, 246 (1st Cir. 1990); *Minetos v. Scully*, 625 F. Supp. 815, 818 (S.D. N.Y. 1986).

Moreover, a constitutional error is harmless unless it had a "substantial and injurious effect or influence" on the trier of fact. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). The failure to produce Dr. Kesha as a witness was harmless because, even if he had testified consistently with his post-trial affidavit, his testimony would have been similar to his autopsy report, which was admitted in evidence, and there was substantial evidence that Petitioner premeditated and deliberated the killing.

## G.  Claim Nine:  Failure to Establish the *Corpus Delicti*

Petitioner claims that his state and federal constitutional rights were violated when the prosecution failed to establish the *corpus delicti* of the crime.  Petitioner points out that he was bound over from state district court to state circuit court without the medical examiner's testimony or autopsy report, and his probation officer testified that he admitted to her that he shot the victim as the victim was running away from him.  Petitioner argues that the probation officer's statement should not have been admitted because it did not comport with the evidence and because the *corpus delicti* was never established.

Michigan's *corpus delicti* rule "requires proof both of a death and of some criminal agency that caused that death." *People v. McMahan*, 451 Mich. 543, 549; 548 N.W.2d 199, 201 (1996).  The Michigan Supreme Court has emphasized

that such proof must consist of evidence that is independent of the accused's confessions. *People v. Konrad,* 449 Mich. 263, 269–270, 536 N.W.2d 517 (1995) ("the rule provides that a defendant's confession may not be admitted unless there is direct or circumstantial evidence independent of the confession establishing [1] the occurrence of the specific injury [for example, death in cases of homicide] and [2] some criminal agency as the source of the injury").

*Id*. "If a body discloses death occasioned by criminal means then the corpus delicti is made out," *id*., 451 Mich. at 550; 548 N.W.2d at 202 (quoting *People v. Kirby*, 223 Mich. 440, 451; 194 N.W. 142, 145 (1923)(Wiest, C.J., concurring)), and "[o]nce the corpus delicti of the crime is established, appropriate extrajudicial confessions of the accused are admissible." *Id*., 451 Mich. at 549; 548 N.W.2d at 201-02.

The prosecutor and defense counsel stipulated to the admission of the medical examiner's report, which indicated that the victim died from a gunshot wound and that the manner of death was homicide. The autopsy report by itself demonstrated that the victim died by a criminal agency, and, shortly before his death, the victim told witnesses that Petitioner shot him. The Court, therefore, agrees with the Michigan Court of Appeals that "the *corpus delicti* of murder was established by a preponderance of the evidence." *Id*. It follows that Petitioner's confession to his probation officer was admissible.

## IV. CONCLUSION AND ORDER

Petitioner's third and fourth claims are procedurally defaulted, and his other claims lack merit because the state appellate court's adjudication of the claims was not contrary to Supreme Court precedent or an unreasonable application of Supreme Court precedent. The state court also did not unreasonably apply the facts to Petitioner's case, and its decision was not so lacking in justification that there was an error beyond any possibility for fairminded disagreement. The Court, therefore, denies the petition for writ of habeas corpus with prejudice.

Petitioner may not appeal the Court's denial of his habeas petition unless a district or circuit judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Because reasonable jurists would not disagree with the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further, the Court declines to issue a certificate of

appealability. The Court, nevertheless, will allow Petitioner to proceed *in forma pauperis* on appeal because he was granted permission to proceed *in forma pauperis* in this Court, and an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

<u>S/Denise Page Hood</u>
Denise Page Hood
Chief Judge, United States District Court

Dated: May 31, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 31, 2018, by electronic and/or ordinary mail.

<u>S/LaShawn R. Saulsberry</u>
Case Manager